In the Matter of IRVING B. CHAIKIN, an Attorney, Respondent.

First Department, May 12, 1933.

*Einar Chrystie*, for the petitioner.

Respondent in person.

FINCH, P. J. The respondent was admitted to practice as an attorney and counselor at law in the State of New York on March 11, 1931, at a term of the Appellate Division of the Supreme Court, Second Department, and has practiced as such attorney since his admission.

By the petition herein he is charged with professional misconduct as set forth below.

The respondent answered, and the matter was referred to an official referee to take testimony with respect to the charges and report the same to this court, together with his opinion thereon. The learned referee has duly reported, finding the respondent guilty as charged.

The matter now comes before this court, upon motion of the petitioner, for the confirmation of the report of the referee and such other action as may be deemed just and proper.

The facts as found by the referee are fully sustained by the record. They are as follows: In the month of November, 1930, one Charles Korenvass brought an action against one Morris Meyersohn in the Municipal Court, Borough of Brooklyn, Third District. Benjamin Finkel appeared as attorney for the plaintiff. The respondent was at that time not a member of the bar and was employed as law clerk in the office of Harry Kisver. He requested of Mr. Kisver and received permission to place Mr. Kisver's name as attorney on the answer which was interposed on behalf of the defendant. Meyersohn is a brother-in-law of the respondent. Negotiations looking to a settlement were had. Mr. Finkel was under the

impression that he was talking over the telephone with Mr. Kisver, but later learned that it was the respondent. Not having received a satisfactory answer from the respondent, Mr. Finkel noticed the case for trial. It appeared on the day calendar on May 13, 1931, on which day an inquest was taken upon the defendant's default. Judgment was entered on May 20, 1931, for $131.86 in favor of the plaintiff Korenvass against the defendant Meyersohn. At first no proceedings were taken for the collection of the judgment for the reason that Mr. Finkel had been informed by his client that the judgment was worthless. However, in the month of June, 1931, Mr. Finkel was advised that Meyersohn had an account with the Lincoln Savings Bank of Brooklyn, whereupon he served a third party order on the bank. The amount to the credit of Meyersohn was in excess of $800. In the month of September, 1931, Meyersohn learned that payment of his account at the bank had been enjoined. The respondent, who had in the meantime been admitted to the bar, communicated with Mr. Finkel, who consented to release the account upon condition that monthly payments of five dollars each be made and some guaranty be furnished that the judgment would be paid. The respondent stated that he would let Mr. Finkel know his answer thereto within a few days. Mr. Finkel did not fix the exact date of this proposed arrangement. However, in a letter written on September 25, 1931, to the attorney for the committee on grievances of the petitioner, the respondent stated that he had received notice from his client on the evening of September seventeenth that the order had been served on the bank and that on the following day he telephoned to Mr. Finkel. Apparently, the conversation with the respondent, which Mr. Finkel testified to, took place on September 18, 1931. Mr. Finkel received no answer from the respondent to his offer of settlement. Instead, the respondent prepared motion papers to vacate the judgment entered May 20, 1931. He served the papers at about eight P. M. on September 19, 1931, in accordance with rule 20, subdivision 3, of the Rules of Civil Practice, by depositing the same in an inclosed envelope in the letter drop of Mr. Finkel's office, the same being closed at the time. The motion was made returnable on September 22, 1931, pursuant to rule 12, subdivision (a), of the Municipal Court Rules, which requires not less than three days' notice unless otherwise directed by the court. The respondent placed Mr. Kisver's name on the motion papers as attorney for the defendant Meyersohn, although he had not received permission to do so. September 19, 1931, fell on a Saturday. Monday, September 21, 1931, was the Day of Atonement, which is a most important Jewish sacred day. Both Mr. Finkel and the respondent

are of the Jewish faith. On September 22, 1931, the respondent submitted the motion to the justice presiding in the Municipal Court, who granted same on the plaintiff's default. The respondent procured the order vacating the judgment to be signed and entered, and served a certified copy on the Lincoln Savings Bank.

Meyersohn, having been notified of the proceeding, withdrew before two P. M. on September twenty-second his entire deposit from the bank. In the meantime Mr. Finkel, whose office had been closed on Monday, September twenty-first, found the motion papers upon his arrival at his office at about ten-thirty A. M. on Tuesday, September twenty-second. He called Mr. Kisver on the telephone, who stated that he knew nothing about the matter. Mr. Finkel then prepared papers for an order to show cause for a reargument of the motion to vacate the judgment. This order was signed about one P. M. on Tuesday and contained a stay pending the determination thereof. It was served upon the bank but by that time the entire amount to the credit of the defendant had been withdrawn. Subsequently the reargument was granted and the judgment was vacated upon condition that the amount of the judgment be deposited in court. The deposit was not made so that the judgment remained in full force and effect. No part of the judgment has been collected.

All the aforesaid facts were specifically admitted by the respondent, the only issue presented being whether from said facts should be drawn the inference that the respondent intended to take advantage of the intervening Sunday and Jewish holiday to bring about a default upon the motion and thus obtain a release of the money in the savings bank.

It was the contention of the respondent that he had no such intention, that he acted within the rules and that he did not know that the Monday following the service of the notice of motion was a Jewish holiday. And this notwithstanding the fact that Monday was the Day of Atonement, conceded by the respondent to be the holiest day among the Jews and one which is generally observed even by those who do not observe the other holidays, and his further concession that he himself observed that holiday and went to the synagogue.

The record shows that the respondent deliberately planned to bring about an involuntary default by keeping timely notice of the motion from his adversary by sharp practice. Thereafter with unseemly haste the money on deposit in the bank was withdrawn in an obvious attempt to anticipate any action on the part of the plaintiff upon learning the facts. The court quotes the following from the report of the learned referee, as portraying the impression of the

respondent conveyed by this record. He says: " It is distressing that, upon the very threshold of his legal career, the respondent should be guilty of such a flagrant violation of professional ethics. He appears to be devoid of an appreciation of the rudimentary requirements of proper conduct between attorneys. He relied for his defense upon a compliance with the rules regulating the service of motion papers. This was his justification for bringing about a change in the status between the parties to the action whereby the creditor was deprived of his security and the debtor, his client, was able to make away with the money. And what aggravates his conduct is that this was done while negotiations for a settlement were pending. On Friday, September 18th, the respondent told Mr. Finkel that he would let him know within a few days whether he would accept Mr. Finkel's proposition. He failed to advise Mr. Finkel, but on Saturday night served the motion papers. The respondent did not consider this unethical. He was brazen in the defense of his action. In answer to a question whether he did not think it was fair to give the other side a chance to come in and be heard before taking such drastic action as would release the deposit and enable his client to get the money out of the bank, he answered, ' I did not think of that at all. I had drawn my motion papers and had given him time, in accordance with the Municipal Court Code, and that was all there was to it.' And when he was asked whether he did not think it strange that the plaintiff having security for his judgment, his attorney would let that go by failing to appear and oppose the motion to vacate, he answered: ' I did not think of that at all.' He evidently does not realize that the practice of the law is or should be an honorable profession in which trickery should have no place. He evinced an amazing callousness towards the dictates of professional fair dealing. He was quite satisfied that he had acted correctly, being unconscious of any professional misconduct. In fact, when called upon at the hearing to meet the charges he limited himself to the following statement:

" ' The facts are as substantially charged herein, and those which have gone on record I have admitted. However, as to any implication of wrongdoing therefrom I deny that there was any such motive or intent of wrongdoing, and any such implication to be drawn is erroneous, untrue and incorrect. That is all, your Honor.'

" It was only on cross-examination that he attempted to exculpate his offense by claiming that he was unaware of the approaching Day of Atonement. His excuse must be rejected. There is

no doubt that he made the motion with a knowledge of the Jewish holiday on Monday in the hope of trapping his opponent into a default."

The respondent should be suspended for a period of one year, with leave to apply for reinstatement at the expiration of that time, upon proof of his compliance with the conditions incorporated in the order.

MERRELL, McAVOY, MARTIN and SHERMAN, JJ., concur.

Respondent suspended for one year.